# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF TEXAS

# AUSTIN DIVISION

| | | |
|---|---|---|
| GARY HAYDEN GIBBS, § | | |
| Petitioner, § | | |
| § | | |
| V. § | A-09-CA-716-LY | |
| § | | |
| RICK THALER, Director, § | | |
| Texas Dept. of § | | |
| Criminal Justice-Correctional § | | |
| Institutions Division, § | | |
| Respondent. § | | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

To: The Honorable Lee Yeakel, United States District Judge

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1); Petitioner's Memorandum in Support (Document 2); and Respondent's Answer (Document 7). Petitioner, represented by counsel, has paid the filing fee for his application. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

# STATEMENT OF THE CASE

## A. Petitioner's Criminal History

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 368th Judicial District Court of Williamson County, Texas, in cause number 04-159-K368, styled The State of Texas v. Gary Hayden Gibbs. Petitioner was convicted of Driving While Intoxicated ("DWI"), enhanced by five convictions for DWI. The indictment included two penalty paragraphs for two other DWI convictions. The jury found a deadly weapon, an automobile, was used during the commission of the offense. Petitioner was subsequently sentenced to life in prison.

Petitioner's conviction was affirmed on March 1, 2007. Gibbs v. State, No. 03-05-00369-CR, No. 2007 WL 895182 (Tex. App. – Austin 2007, pet. ref'd). Petitioner's petition for discretionary review was refused on December 12, 2007. Gibbs v. State, PDR No. 448-07 (Tex. Crim. App. 2007). Petitioner also challenged his conviction in a state application for habeas corpus relief. The Texas Court of Criminal appeals denied the application without written order on the findings of the trial court on July 22, 2009. Ex parte Gibbs, Appl. No. 72,312-01 at cover.

## B. Factual Background

The factual background of this case is found in the Court of Appeals opinion and is repeated below.

> Around 1:00 a.m. on December 5, 2003, Roy Black, a truck driver with 28 years' experience, was driving an 18-wheeler towing a double trailer southbound on IH-35 between Jarrell and Georgetown. While Black was driving his truck in the right lane, he noticed a white van moving erratically. Black testified that the driver of the white van moved from the middle lane to the right lane and "cut [him] off," avoiding a collision with Black's truck by "a few feet ." Black estimated that the white van was traveling at 66 miles per hour and that his truck was traveling at 65 miles per hour.

Black testified that he "probably" reduced his speed after the van cut in front of him, although he did not have to apply his brakes or take evasive action.

Black testified that the white van then veered onto the right shoulder and crossed back through the right lane while returning to the middle lane. Black estimated that he saw the driver of the white van weave back and forth between the middle lane and the shoulder "[p]robably three or four times" while following the van for six or seven miles. Black testified that his truck and the white van were the only vehicles on the road during the time that he was following the van.

Black called 911 to report the driver of the white van because he was concerned that the driver might seriously injure or kill someone. Black testified,

> Q. In the manner that that white van was driving that night, on December 5th of 2003, cutting you off, weaving in front of you, was the manner in which he was driving or using that vehicle-was it capable of causing serious bodily injury or death?
>
> A. Yes, sir. Like I say, that's the reason I called. If I didn't think that, I wouldn't have called.

Black described the van and the erratic driving to the dispatcher and stayed on the line until the driver of the van exited IH-35 at the Highway 29 exit. Black did not follow the van after the driver exited the highway.

Officer Jason Jones of the Georgetown Police Department responded to a call from dispatch about a reckless driver on IH-35. Jones was given a description of the van and its approximate location. Jones spotted a van that met the description turning westbound onto Highway 29 from the IH-35 frontage road. Jones suspected that the van that he saw was the subject of the call from dispatch because "there's not a lot of white vans in that area traveling southbound on the frontage road." Jones testified that immediately after turning onto Highway 29, the driver of the white van moved onto the unimproved shoulder and stopped the van.

Jones testified,

> At that point we weren't real sure what we had. I wasn't sure if I had an intoxicated driver, or I wasn't sure if I had a person that had a medical emergency that needed help or somebody that was lost or something of that nature. So not really knowing what I had, I pulled in behind the vehicle and turned my lights on and made contact with the driver.

Gibbs, the van's driver, told Jones that he was lost and looking for Highway 29. Jones testified that Gibbs's speech was slurred and that Jones noticed a strong odor of alcoholic beverages on Gibbs's breath. Jones testified that Gibbs admitted that he drank two large drinks containing vodka and soda that evening.

Jones asked Gibbs to get out of his vehicle so that Jones could administer field sobriety tests. Jones testified that Gibbs "was unsteady on his feet while walking, and he had to use his vehicle to maintain his balance." Jones first administered the horizontal gaze nystagmus test; Jones testified that Gibbs failed this test because Jones observed all six "clues" of intoxication. Gibbs then failed the walk-and-turn test; Jones testified that he observed both "clues" in the instructional phase of the test and four out of six "clues" in the walking phase of the test. Jones then began administering the one-leg-stand test; however, he cut the test short because Gibbs was drifting into the middle of the road, creating a safety hazard, and because Jones "knew that [Gibbs] was intoxicated." Even though Jones told Gibbs that he had "seen enough," Gibbs requested that he be allowed to perform the one-leg-stand test. Jones testified that he administered the test and that Gibbs failed because Jones observed two of four "clues" of intoxication. FN3

> FN3. Examples of "clues" of intoxication include stepping off the line or using arms to balance on the walk-and-turn test and swaying or hopping during the one-leg-stand test. National Highway Traffic Safety Admin., U.S. Dep't of Transp., Development of a Standardized Field Sobriety Test (SFST) Training Management System (Nov.2001), http://www.nhtsa.dot.gov/people/injury/alcohol/SFST/appendix_a.htm.

Jones arrested Gibbs and took him to the police station. Although Gibbs had agreed at the scene of his arrest to submit to Intoxilyzer breath testing, when he arrived at the jail he refused to provide a breath sample. The State brought Gibbs to trial on May 24, 2005, and presented the jury with Black's and Jones's testimony and the videotape of Gibbs's arrest, which shows the field sobriety tests that were administered to Gibbs and is consistent with Jones's account. As mentioned above, the jury convicted Gibbs of felony DWI, made an affirmative finding that Gibbs used or exhibited his vehicle as a deadly weapon during the commission of the offense, and sentenced Gibbs to life in prison.

Gibbs, 2007 WL 895182 at *1-2.

C.   **Petitioner's Grounds for Relief**

Petitioner alleges he was denied effective assistance of counsel at trial when his attorney abandoned his motion to suppress his detention and stop for lack of reasonable suspicion.

D.   **Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application. A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings.

## DISCUSSION AND ANALYSIS

A.   **The Antiterrorism and Effective Death Penalty Act of 1996**

The AEDPA radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. § 2254. Under the AEDPA's standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quoting (Terry) Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1523 (2000)). The inquiry into whether the decision was based on an "unreasonable

determination of the facts" constrains a federal court in its habeas review due to the deference it must accord the state court. See id.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 740-41.

Section 2254(d)(2) speaks to factual determinations made by the state courts. See 28 U.S.C. § 2254(e)(1). While we presume such determinations to be correct, the petitioner can rebut this presumption by clear and convincing evidence. See id. Absent an unreasonable determination in light of the record, we will give deference to the state court's fact findings. See id. § 2254(d)(2). With these principles in mind, this Court must now turn to the issues raised by the pleadings in this cause.

**B.      Ineffective Assistance of Counsel**

In his sole ground for relief, Petitioner argues that he was denied effective assistance of counsel at trial when his attorney abandoned his motion to suppress the stop and detention proceeding the arrest of Petitioner. Petitioner raised this same issue in his state application for habeas corpus relief. The state courts rejected the merits of Petitioner's claim. As such, the AEDPA limits the scope of this Court's review to determining whether the adjudication of Petitioner's claim by the state court either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

<u>Id.</u> at 687, 104 S. Ct. at 2064. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. <u>Id.</u> at 686-689, 104 S. Ct. 2064-65. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Id.</u> at 689, 104 S. Ct. at 2065. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Id.</u> (Citation omitted). Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. <u>Id.</u> at 695-97, 104 S. Ct. at 2069. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of

reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687, 104 S. Ct. at 2064.

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. CONST. AMEND. IV. Traffic stops are deemed seizures for the purposes of the Fourth Amendment. United States v. Valadez, 267 F.3d 395, 397 (5th Cir. 2001). The legality of a traffic stop is analyzed under the framework articulated in Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968). Knowles v. Iowa, 524 U.S. 113, 117, 119 S. Ct. 484 (1998); Berkemer v. McCarty, 468 U.S. 420, 439, 104 S. Ct. 3138 (1984). Under the two-part Terry reasonable suspicion inquiry, we ask whether the officer's action was: (1) "justified at its inception;" and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 19-20, 88 S. Ct. 1868.

For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005), cert. denied 546 U.S. 1222, 126 S. Ct. 1449 (2006). "The Supreme Court has stated that in making a reasonable suspicion inquiry, a court must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744 (2002) (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S. Ct. 690 (1981)). The Fifth Circuit has stated that reasonable suspicion exists when an officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. See, e.g., United States v. Santiago, 310 F.3d 336, 340 (5th Cir. 2002). In evaluating the totality of the

circumstances, a court may not consider the relevant factors in isolation from each other. Arvisu, 534 U.S. at 274, 122 S. Ct. 744. In scrutinizing the officer's basis for suspecting wrongdoing, it is clear that the officer's mere hunch will not suffice. Terry, 392 U.S. at 27, 88 S. Ct. 1868. It is also clear, however, that reasonable suspicion need not rise to the level of probable cause. Arvizu, 534 U.S. at 274, 122 S. Ct. 744.

As for the second prong of the Terry inquiry, generally, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop ..." United States v. Brigham, 382 F.3d 500, 507 (5th Cir. 2004) (en banc). In the course of effectuating the stop, a police officer may permissibly examine the driver's license and registration and run a computer check to investigate whether the driver has any outstanding warrants and if the vehicle is stolen. Id. at 507-08. An officer may also ask the driver about the purpose and itinerary of his trip. Id. at 508. Indeed, the officer's questions need not even be related to the purpose of the traffic stop since "[d]etention, not questioning, is the evil at which Terry's second prong is aimed." Id. (quoting United States v. Shabazz, 993 F.2d 431, 436 (5th Cir. 1993)). Although an officer's inquiry may be wide-ranging, once all relevant computer checks have come back clean, there is no more reasonable suspicion, and, as a general matter, continued questioning thereafter prolongs the detention. Brigham, 382 F.3d at 510; see also Santiago, 310 F.3d at 341-42; United States v. Jones, 234 F.3d 234, 241 (5th Cir. 2000); United States v. Dortch, 199 F.3d 193, 200 (5th Cir. 1999). A recognized exception to that rule is that if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, the detention may continue until the new reasonable suspicion has been dispelled or confirmed. See Brigham, 382 F.3d at 507; United States v. Grant, 349 F.3d 192, 196 (5th Cir. 2003), cert. denied, 540 U.S. 1227, 124 S. Ct. 1526 (2004).

Petitioner's counsel provided his affidavit in response to Petitioner's state application for habeas corpus relief. Ex parte Gibbs, Appl. No. 72,312-01 at Supp. 1-4. Relying on the affidavit, the state court issued detailed findings of fact and conclusions of law. Ex parte Gibbs, Appl. No. 72,312-01 at 148-161. Specifically, the state habeas court found:

> Sablatura did not attempt to suppress the recording or any other evidence based on lack of reasonable suspicion for the traffic stop and ensuing detention of applicant. Sablatura knew that a police officer's decision to stop and detain an operator of a motor vehicle may be based on information provided by another person, including a civilian, and need not be based solely, or even partially, on the officer's own firsthand observations. Sablatura believed that the stop and detention of applicant was supported by reasonable suspicion that he had committed the offense of driving while intoxicated. Sablatura did not believe that the issue of the legality of the stop and detention of applicant by Officer Jones was an issue worth pursuing.

Id. at 151-52. The court concluded Sablatura's performance was not deficient under Strickland. Id. at 156. In particular, the court concluded:

> Sablatura was not deficient in abandoning the motion to suppress evidence based on lack of reasonable suspicion by Officer Jones to stop and detain applicant. The trial court would not have erred in denying any attempt to suppress the evidence obtained as a result of applicant's stop and detention on that basis. Ex parte White. Prior to stopping applicant, Officer Jones learned from his dispatcher that a white Chevrolet van was swerving across lanes of traffic while driving southbound on Interstate 35 in Georgetown. The information relayed to Officer Jones by the dispatcher had been conveyed to the dispatcher by Roy Black. An officer's decision to conduct a traffic stop need not be based on the officer's personal observation but may be based o information acquired from another person, including a person who is not in law enforcement. See Brother v. State, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005) (officer's decision to stop defendant based on observations of citizen who observed defendant's erratic driving relayed through police dispatcher). At the time he stopped applicant's van, Officer Jones was in possession of sufficient facts from which he could reasonably conclude that applicant was engaged in criminal activity, namely driving while intoxicated. Id.
>
> Once Officer Jones stopped applicant, his continued detention of applicant to investigate the offense of driving while intoxicated was valid based on his observations of applicant's slurred speech, the odor of alcoholic beverages, and applicant's difficulty with his balance.

10

Ex parte Gibbs, Appl. No. 72,312-01 at 158.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel.

## RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner

shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

In this case, reasonable jurists could not debate the denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S. Ct. 1029 (2003) (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## **OBJECTIONS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is

ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 21st day of January, 2010.

_____
ROBERT PITMAN
UNITED STATES MAGISTRATE JUDGE